**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

THE TRADERS BANK,

      Appellant,

v.             CIVIL ACTION NO. 6:07-cv-00178

DEBORAH KOLLAR, et al.,

      Appellee.

**MEMORANDUM OPINION AND DECISION**

  Pending before the court is an appeal from the United States Bankruptcy Court for the Southern District of West Virginia challenging the Bankruptcy Court's holding that the appellant, The Traders Bank ("Traders"), is liable to the appellee and debtor, Deborah Kollar ("Kollar"), for fraud and unconscionability regarding Traders' loan agreement with Kollar. Pursuant to 28 U.S.C. § 158(a)(1) (2000), this court has jurisdiction over the appeal. For the reasons stated herein, the court **AFFIRMS** the Bankruptcy Court.

**A. Background**

  This case involves the financing and sale of of property located at 193U Butcher Bend Road, Mineral Wells, West Virginia, which consists of a house, an office building, and approximately 15 acres (the "Property"). Consolidated Mine Service ("CMS"), a company owed by G. Stephan and Vivian Fadlevich, Third Party Defendants in this matter, originally owned the property. Traders held a mortgage on the Property and several other pieces of property owned by the Fadleviches through CMS. The Property secured a total indebtedness of approximately $3 million. In 1996, the

Fadleviches vacated and attempted, without success, to sell the Property. In 1999, the Fadleviches requested that Traders allow them to sell the Property by absolute action and that the proceeds of the sale be accepted in exchange for Traders' release of the mortgage. By 2000, the CMS loans were failing.

During this time, the Fadleviches approached Deborah Kollar and her husband about purchasing the Property. The Kollars run a franchise for door-to-door sales of vacuum cleaners. In July 2000, the Kollars began moving forward with the purchase of the Property. Although no sales contract was executed by the parties, the Kollars moved into the house located on the Property in September 2000.

Mrs. Fadlevich arranged a meeting between Traders and the Kollars to arrange financing for the purchase of the Property. In October 2000, Mrs. Kollar began the financing process with Traders. The Bankruptcy Court found that throughout the loan application process, Traders and Mrs. Fadlevich "encouraged the Kollars to go forward with the purchase by representing that . . . the Kollars were still getting quite a deal in that the Property was worth in excess of one million dollars, a value that was supported by an appraisal." In fact, no new appraisal was done in association with the Kollar loan. The Fadleviches had the Property appraised in 1996 for approximately $1.2 million and in 1999, for $500,000 if sold at absolute auction. The $500,000 appraisal was requested by Traders in connection with the Fadleviches' request to sell the Property by absolute auction. Mrs. Fadlevich claims that she gave a copy of the $1.2 million appraisal to Mrs. Kollar, a fact which Mrs. Kollar contests. The Bankruptcy court found that "Traders never informed the Kollars of the appraisal that concluded that at absolute auction, the Property was worth no more

than $500,000. The court also found that neither Traders nor Mrs. Fadlevich informed the Kollars that their purchase would be partially satisfying the failing CMS loans.

Mrs. Kollar closed on the Property in December 2000. Mrs. Kollar agreed to repay the $850,000 purchase price to Traders through eleven monthly payments of $3,500 and a final balloon payment of $877,374. The note also included a provision allowing Mrs. Kollar to annually renew the note after making the monthly payments and an additional year-end payment of $34,000. The Kollars made payments in 2001 but were unable to fully pay the year-end payments in 2002 and 2003 because their business had declined. Traders initiated foreclosure proceedings after the loan went into default. The Kollars subsequently filed a complaint with the Division of Banking and initiated an adversary proceeding in the Bankruptcy Court for fraud and unconscionability, alleging that Traders made oral misrepresentations and suppressed information to induce Mrs. Kollar to purchase the Property and to enter into a loan agreement with Traders.

Following a trial on the matter, the Bankruptcy Court applied West Virginia law and held that Traders was liable for fraud in inducing Mrs. Kollar to purchase the Property and enter into the loan agreement and that Traders' conduct in connection with the loan transaction was unconscionable. Traders appealed this decision, arguing that the Bankruptcy Court erred in holding that Traders was liable for fraud and unconscionability and that the Bankruptcy Court erred in its calculation of a remedy.

**B. Jurisdiction**

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which authorizes district courts to hear appeals of "final judgments, orders, and decrees" entered by bankruptcy judges. In the bankruptcy context, orders are deemed to be final if they dispose of

discrete disputes within the larger bankruptcy case, particularly when the order finally disposes of a creditor's claim. *See In re Saco Local Dev. Corp.*, 711 F.2d 441, 442-46 (1st Cir. 1983); *see also A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986) (applying broad view of finality of judgment for appeal purposes from district court to appellate court in bankruptcy cases).

## C. Standard of Review

A bankruptcy court's findings of fact will not be disturbed unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *See* Fed. R. Bank. P. 8013. Under that standard, "findings of fact will be affirmed unless [the appellate court's] review of the entire record leaves [it] with the definite and firm conviction that a mistake has been committed." *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). The bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1996). Mixed questions of law and fact are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts." *U.S. Dept. of Health & Human Services v. Smitley,* 347 F.3d 109, 116 (4th Cir. 1996)(citation omitted). Finally, decisions made in the exercise of a bankruptcy court's discretion will not be set aside unless there is plain error or an abuse of discretion. *In re Hawley Coal Mining Corp.,* 47 B.R. 392, 394 (S.D. W. Va.1984).

## D. Discussion

### *I. Fraud*

In order to prove fraud in the inducement in West Virginia, the plaintiff must prove: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying

-4-

upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 139 S.E. 737, 738 (W. Va. 1927). An action for fraud can arise by the concealment of truth or the utterance of a falsehood. *Smith v. First Cmty. Bancshares, Inc.*, 575 S.E.2d 419, 432 (W. Va. 2002). As discussed above, the Bankruptcy Court applied this test to the factual circumstances of this case and held:

> Mrs. Kollar was induced into the loan with Traders, working in concert with Mrs. Fadlevich, by the suppression of evidence indicating that the market value was below the purchase price, the suppression of the relationship that Traders had with Mrs. Fadlevich and the Property, and the affirmative misrepresentation by Traders as to the actual value of the Property. While Mrs. Kollar probably should have investigated the value further, her reliance on the value estimations of Traders is not unrealistic given the normal incentives of lenders to make loans where the value of the collateral exceeds the loan amount. Mrs. Kollar had no way of knowing that these usual incentives were not present in this case. Therefore, the Court finds that her reliance on Traders' representations were justified under these circumstances.

Accordingly, the Bankruptcy Court held Traders liable to Mrs. Kollar for fraud in inducing her to enter into the purchase agreement and loan agreement.

Traders argues on appeal that the Bankruptcy Court erred in finding Traders liable for fraud for three reasons: (1) the Bankruptcy Court's factual finding that Traders' representative, Mike Allen, told Mrs. Kollar that the Property was worth more than $1,000,000 was clearly erroneous; (2) an opinion of the Property's value cannot constitute fraud; and (3) Mrs. Kollar's reliance was not justified. After conducting a trial on the issue, hearing testimony by Mr. Allen and Mrs. Kollar, and reviewing the evidence, the Bankruptcy Court made the following factual finding: "While Mr. Allen testified that he did not encourage the Kollars to go forward with the transaction by representing that the Property was worth more than one million dollars, the Court finds his testimony in this regard not to be credible." As discussed above, this court reviews the bankruptcy court's findings of fact for clear error, giving due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses. *See* Fed. R. Bank. P. 8013. The court **FINDS** that the Bankruptcy

Court's factual finding that Mr. Allen told Mrs. Kollar that the Property was worth more than $1,000,000 was not clearly erroneous.

Second, Traders asserts that Mrs. Kollar's fraud claim is not actionable under West Virginia law because "it must appear that the representations were matters susceptible of approximately accurate knowledge on the part of the defendant, otherwise they should be regarded as expressions of opinion merely." *Jones v. McComas*, 115 S.E. 456 (W. Va. 1922). Traders argues that neither Mr. Allen, nor anyone else, could have possessed the requisite knowledge of the value of the Property given that only two appraisals with widely divergent values existed.

The court agrees that generally, statements of opinion do not give rise to a cause of action for fraud. *See Horton*, 139 S.E. at 738. There are, however, exceptions to this rule, such as when "a seller misrepresents the quality or value of the thing sold to be other than it is, in some particulars, which the buyer has not equal means with himself of knowing." *Id.* at 739. "Whether a given representation is an expression of opinion or a statement of fact depends on the facts and circumstances of the particular case, such as the form and subject matter of the representation, the knowledge, intelligence, and relation of the respective parties, and whether the statement can reasonably be understood as anything other than opinion." 37 C.J.S. *Fraud* § 13.

Here, the Bankruptcy Court concluded that Traders was liable for fraud after it found, as a matter of fact, that Traders suppressed evidence that the market value of the Property was below the purchase price, that Traders suppressed evidence of its relationship with Mrs. Fadlevich and the Property, that Traders affirmatively misrepresented the actual value of the Property, and that Traders presented its role in the transaction to Mrs. Kollar as simply the lender, rather than the ultimate

recipient of the purchase money.  The Bankruptcy Court further concluded, as a matter of fact, that "Mrs. Kollar lacked the knowledge as to what Traders true role in this transaction was."

Traders' affirmative misrepresentation, even if considered an opinion, does not stand alone; it must be considered in tandem with the suppression of facts and Traders' position as Mrs. Kollar's lender.  *See Horton*, 139 S.E. at 739.  In this case, the Bankruptcy Court rested its conclusion that Traders was liable for fraud on its factual findings that Traders presented itself as solely Mrs. Kollar's lender in the transaction, Traders' suppression of information, and Mrs. Kollar's unequal bargaining position in the transaction.  While representations by the seller as to the price of property may often be regarded as puffery or sales talk, those same representations, when considered in conjunction with the circumstances of this case–namely Traders' position as Mrs. Kollar's lender and its suppression of facts–may give rise to a claim of fraud.  *See id.* at 738-39.  The court **FINDS** that the Bankruptcy Court's conclusion that Traders' suppression of evidence of the market value of the Property, suppression of the relationship between itself, Mrs. Fadlevich and the Property, and affirmative misrepresentation as to the actual value of the Property constituted fraud was not in error.  Finally, Traders contests the Bankruptcy Court's holding that Mrs. Kollar's alleged reliance was justified.  The Bankruptcy Court made the following factual finding: "While Mrs. Kollar probably should have investigated the value further, her reliance on the value estimations of Traders is not unrealistic given the normal incentives of lenders to make loans where the value of the collateral exceeds the loan amount.  Mrs. Kollar had no way of knowing that these unusual incentives were not present in this case."  Mrs. Kollar had the right to rely on the representations made by Traders without further investigation.  "[O]ne to whom a representation has been made as an inducement to enter into a contract has the right to rely upon it as true quoad the maker and need

make no further inquiry." *Horton*, 139 S.E. at 738. Upon reviewing the entire record, the court **FINDS** that the Bankruptcy Court's findings of fact were not clearly erroneous. Given these factual findings, including the Traders' role in the transaction and Mrs. Kollar's lack of information, the Court **FINDS** that the Bankruptcy Court did not err in holding that Mrs. Kollar's reliance was justified.

*II. Unconscionability*

In determining whether a contract is void for unconscionability, the court should consider "the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co.*, 413 S.E.2d 670, 671 (W. Va. 1991). In undertaking its analysis, the court should "focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *Id*. The Bankruptcy Court applied this test to the fact of this case and held:

> Traders had knowledge of the disparities between the actual worth of the Property and the purported worth, along with the disparity between both of these values and the loan amount. Additionally, Mrs. Kollar lacked the knowledge as to what Traders true role in this transaction was. Traders presented itself as simply the lender, but in many ways it was also the seller of the Property, in that Traders was the ultimate recipient of the purchase money. Regardless, Traders concealed its full role in the transaction from Mrs. Kollar to her detriment.

Accordingly, the Bankruptcy Court held Traders' conduct in connection to the loan transaction to be unconscionable.

Traders argues on appeal that the Bankruptcy Court erred in its application of the unconscionability test to the facts of this case because there was no evidence that Mrs. Kollar was oppressed or unfairly surprised by Traders or that the respective bargaining positions of the parties

were grossly unequal. West Virginia courts recognize that "in many commercial transactions, some inequality of bargaining power exists." *Art's Flower Shop*, 413 S.E.2d at 674. In order to find a contract unconscionable, "something more is required." *Id*. The Bankruptcy Court determined that Mrs. Kollar had a tenth grade education, that she and her husband ran a franchise for door-to-door sales of vacuum cleaners, and that they had previously entered a loan agreement to purchase their business property. These facts, standing alone, would likely be insufficient to support a finding of unconscionability.

The Bankruptcy Court based its holding, however, on Mrs. Kollar's lack of knowledge of the actual worth of the Property and Traders' true role in the transaction. Additionally, the court considered Traders' alleged violation of federal and state statutes and regulations and found that the fact that no new appraisal was done for the Kollar loan "contradicts federal policy, 12 C.F.R. § 225.63(b), and is indicative of a desire by Traders to partially compensate for the failing CMS loans by substituting the Kollars as payers on the debt."[1] In evaluating whether a contract is unconscionable, the court may consider "procedural unconscionability," or unconscionability based on unfairness or inequities in the bargaining process. *Troy Mining Corp. v. Itmann Coal Co.*, 346

---

[1] The Bankruptcy Court cites subsection (b) of Section 225.63 requiring an "Evaluation" when an appraisal by a State certified or licensed appraiser is not required under subsection (a). Subsection (a) of Section 225.63 provides that "[a]n appraisal performed by a State certified or licensed appraiser is required for all real estate-related financial transactions" except in certain enumerated circumstances. Traders argues that no Appraisal is required under subsection (a) because "[t]he transaction involves an existing extension of credit at the lending institution." 12 C.F.R. § 225.63(a)(7). This subsection addresses renewals, refinancing and other transactions resulting from the existing extension of credit for the same borrower, not a new provision of credit to a new borrower and is not applicable to the facts of this case. *See* 59 Fed. Reg. 29482, 29492- 29493 (June 7, 1994); 58 Fed. Reg. 31878, 31881-31882 (June 4, 1993). Although the Bankruptcy Court found the lack of an Appraisal to "contradict federal policy" under subsection (b), it would appear to this court that under subsection (a) an appraisal performed by a State certified or licensed appraisal was required. Regardless of whether an appraisal or evaluation was required, Traders failed to do either and its lack of compliance with Federal regulations is indicative of the unconscionability of the contract.

S.E.2d 749, 753 (W. Va. 1986). Whether a contract is unconscionable "often depends on the circumstance in which the contract was executed." *Id.* Here, federal law required, at the very least, that Traders "obtain an appropriate evaluation of real property collateral that is consistent with safe and sound banking practices." 12 C.F.R. § 225.63(b) The Bankruptcy Court made a factual finding that Traders failure to perform an appraisal in conjunction with Mrs. Kollar's transaction violated federal policy. The court **FINDS** that the Bankruptcy Court's holding that Traders' conduct was unconscionable based on Mrs. Kollar's bargaining position and the procedural deficiencies was not in error.

### *III. Traders Duty to Disclose Information*

Traders additionally argues that the Bankruptcy Court erred in holding that Traders had a duty to disclose information to Mrs. Kollar. Traders misstates the Bankruptcy Court's holding. The Bankruptcy Court did not hold that Traders had a duty to inform Mrs. Kollar of the relationship between Traders and the Fadleviches, the financial condition of the Fadleviches, or the 1999 appraisal value. Rather, the Bankruptcy Court held that Traders, working in concert with Mrs. Fadlevich, induced Mrs. Kollar into the loan by suppressing evidence that the market value was below the purchase price, by suppressing Traders' relationship with Mrs. Fadlevich, and by affirmatively misrepresenting the actual value of the Property. The Bankruptcy Court focused on Traders' acts, statements and omissions which induced Mrs. Kollar into the loan. The fact that the Bankruptcy Court held that an omission by Traders resulted in fraud and an unconscionable contract is distinct from a holding that Traders violated a duty.

*IV. Merger Clauses & Parol Evidence Rule*

Traders contends that the misrepresentations alleged by Mrs. Kollar preceded the execution of the contract signed by Mrs. Kollar, and therefore her fraud claim is barred by the contract's merger clause and the parol evidence rule.  Generally, "a clear and unambiguous contract must be applied without reference to extrinsic evidence." *Lowe v. Albertazzie*, 516 S.E.2d 258, 265 (W. Va. 1999).  An exception to that rule exists "[w]here allegations of fraud, mistake or material misrepresentations are made." *Id.*  In those cases, extrinsic evidence is permitted.  Here, Mrs. Kollar alleged that Traders fraudulently induced her to enter into a contract. Extrinsic evidence may properly be admitted to prove the alleged fraud.  Accordingly, neither the alleged misrepresentations, nor Mrs. Kollar's fraud claim, are barred by the contract's merger clause or the parol evidence rule.

*V. Mrs. Kollar's Renewals of the Note*

Traders argues that Mrs. Kollar waived her claims because prior to renewing her loan agreements with Traders she was aware that the property would not appraise for as much as $850,000 and renegotiated the terms of her agreement with Traders.  Generally, a right of action for fraud may be waived when the defrauded person, with knowledge of the fraud, enters into a new contract on the same subject matter, modifies or renews the original contract, or asks for additional terms.

The Supreme Court of Appeals of West Virginia considered the issue with respect to a party who has discovered fraud prior to any breach of the contract in *Martin v. ERA Goodfellow Agency, Inc*. 423 S.E.2d 379, 381 (W. Va. 1992), and held that the party "must either elect to rescind the contract on the basis of the fraud or affirm the contract and accept the performance of the party who

committed the fraud." *Id*. at 381. "Where a party has a right to rescind a contract on the ground of fraud, he must rescind at once on discovering the fraud, or as soon thereafter as the circumstances will permit, and any unreasonable delay, without good excuse therefor, will be regarded as a waiver of his right to rescind." *W.E. Deegans Coal Co. v. Hedrick*, 113 S.E. 262 (W. Va. 1922). Concerning the intent of the defrauded, courts have held that "in order to constitute waiver the defrauded party must act with full knowledge of his rights, and of the material facts constituting the fraud." *Bull v. Metropolitan Life Ins. Co.*, 12 S.E.2d 24,26 (S.C. 1940); *see also Citizens & S. Securities Corp. v. Braten*, 733 F. Supp 655 (S.D.N.Y. 1990). The primary question is one of intent; the defrauded party must clearly manifest his or her intent of waiving all right to recover for the deception. 37 C.J.S. *Fraud* § 92.

Here, Traders asserts that Mrs. Kollar had been told by other banks that the Property would not appraise for as much as $850,000. Traders does not allege that Mrs. Kollar had knowledge of Traders' true role in the transaction, the relationship between Traders and Mrs. Fadlevich, or the existence of the affirmative misrepresentation by Traders as to the value of the property. Further, an estimation by other banks as to the appraisal value of the Property hardly provides Mrs. Kollar with actual knowledge of the fraud perpetrated by Traders. This court **HOLDS** that the Bankruptcy Court did not err.

 *VI. Damages*

Finally, Traders contends that the Bankruptcy Court erred in its calculation of damages. The Bankruptcy Court, after "weigh[ing] all of the damages resulting from Traders' intentional conduct against the Kollars' failure to mitigate said damages" found as a matter of fact the amount of damages to be $350,000, "representing the difference between the loan amount induced by Traders

and Mrs. Fadlevich and the actual value of the Property." Traders asserts that the Bankruptcy Court based this award on the premise that the "actual value of the Property" at the time of purchase was $500,000 and that this estimation is unproven and speculative.

In an action for fraud, "the true measure of damages is the difference between the value of the property actually received and its value had it been as represented." *Stout v. Martin*, 104 S.E. 157 (W. Va. 1920). The Bankruptcy Court found as a matter of fact that on March 14, 1999, the Property was appraised at $500,000 if sold at absolute auction. In addition, the parties stipulated, in 2005, that the value of the Property for purposes of adequate protection payments to Traders in the bankruptcy case was $500,000. This court cannot conclude that the Bankruptcy Court's determination that the Property was worth $500,000 at the time of purchase was made without evidentiary support or that it was clearly erroneous. Accordingly, this court **FINDS** the Bankruptcy Court did not err in its calculation of damages.

The court **AFFIRMS** the decision of the Bankruptcy Court. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 18, 2008

Joseph R. Goodwin, Chief Judge